Harold M. CANNING, Plaintiff,

v.

STAR PUBLISHING COMPANY, a corporation of the State of Delaware, Alexis I. duPont Bayard, Erwin M. Budner and William E. Taylor, Jr., Defendants.

Civ. A. No. 1647.

United States District Court
D. Delaware.

June 20, 1956.

Daniel O. Hastings and Clarence W. Taylor (of Hastings, Lynch & Taylor), Wilmington, Del., for plaintiff.

William E. Taylor, Jr., Wilmington, Del., for defendants.

LEAHY, Chief Judge.

This matter arises from defendants' motion for summary judgment. No supporting or opposing affidavits were filed.[1]

The facts of this litigation may be found in D.C.Del., 130 F.Supp. 697, denying defendants' motions to require plaintiff to post a cost bond and to dismiss the complaint; and in D.C.Del., 138 F.Supp. 843, denying plaintiff's motion to strike defendants' demand for jury trial. The main facts are plaintiff entered into a five-year employment contract with defendant corporation on June 30, 1952. On May 28, 1954, plaintiff executed a release of this agreement in favor of defendants for consideration of $5,000. Plaintiff brought suit on September 28, 1954, alleging the release to have been fraudulently induced and claiming damages under Paragraph 3 (b) of the contract.[2]

1. In support of their present motion, defendants contend the circumstances which gave rise to plaintiff's

---

1. See memorandum, on plaintiff's motion to strike, filed this day. 19 F.R.D. 283.

2. Paragraph 3 provides:

"3. Term: The term of employment shall be five years from the date hereof, subject to the following:

"(a) If, during the effective period of this agreement, Canning violates the provisions of Paragraph 5, Star may immediately terminate this agreement and thereupon Star shall be obligated to pay Canning his compensation up to the date of termination.

"(b) Without cause, Star may terminate this agreement at any time upon thirty days written notice to Canning and shall be obligated to pay Canning his compensation for the balance of the full term of this agreement plus additional compensation of Thirty-six Hundred Dollars ($3600).

"Either party may terminate this agreement by notice in writing to the other party six months before the end of the term hereof, and if no notice of termination be given, then the agreement shall automatically renew for an additional period of five years upon the same terms set forth in this agreement unless Canning shall, by notice in writing, indicate to Star that he desires to renegotiate the compensation provided herein before the commencement of the renewed agreement.

"If Canning shall terminate this agreement by notice in writing six months prior to the expiration of its term Star on notice in writing to Canning during said six-month period may require Canning to continue his employment for a period of Six months after the termination of this agreement at the same compensation specified herein, and if Canning shall refuse to continue for this period or such part thereof as required by Star, then he shall forfeit the additional compensation provided in Paragraph 3(b) hereof; otherwise, on termination of this agreement by notice in writing from Canning as specified above, Canning shall receive the additional compensation provided in Paragraph 3(b) as severance pay, even though Star shall not request any continuation of this employment as permitted by this paragraph."

termination of employment form nothing more than a breach of the employment contract, a right every contracting party retains along with the duty to respond in damages if so exercised. The measure of recovery is then the difference between the amount due on the five-year term and, under the ordinary rule of damages applicable to breached employment contracts, the amount derived from plaintiff's obligation to mitigate within that period. Plaintiff, it is said, on this basis is not injured since his mitigation results in a substantial profit. Thus the amount in controversy, which must exceed $3,000 exclusive of interest and costs, is not only lacking to a legal certainty, but no cause of action exists on its face.

2. Plaintiff in opposition, replies the circumstances which gave rise to his termination of employment invoke the provision found in Paragraph 3(b) of the contract (what plaintiff terms option contract or, in the alternative, a provision fixing liquidated damages), notwithstanding the absence of 30 days written notice by defendant Star Corporation. Formal notice, says plaintiff, is for the benefit of the recipient as a condition to his termination of employment and may be obviated by either actual discharge or oral notice clear and certain. Therefore, plaintiff is entitled to damages in the amount specified under 3(b) with no regard to the doctrine of mitigation. On this theory jurisdictional amount is present.

3. Defendants state there is no genuine issue of any material fact. Since plaintiff does not refute this, I must pass on the question *sua sponte*.

It is fundamental under the federal rules where there is a genuine issue of a material fact, summary judgment will not be granted. The Complaint, paragraphs 7 and 9, alleges facts which, if proved, indicate plaintiff's understanding of termination. Defendants, in respective paragraphs of their Answer, deny these allegations. The conflict is pointed up by plaintiff's and defendants' interrogatories and answers thereto under F.R. 33, 28 U.S.C.,[3] and the Rodgers and O'Donnell depositions. This showing is more than sufficient for purposes of refusing summary judgment.[4]

I find the basic common ground essential to the disposition of this motion, i. e., the actual circumstances under which plaintiff's contract of employment was terminated, is undeniably woven into the texture of the release issue to be resolved at trial. If the validity of the release is upheld, there is, of course, an end to the matter. But should the release be struck down, sufficient facts under a special verdict would be then at my disposal by which I could reach an intelligent and informed decision on the legal issue here raised and charge the jury as to the legal rights of plaintiff to damages and the amount thereof. Accordingly, defendants' motion for summary judgment will be denied.

Submit order.

### On Motion to Strike an Affidavit

This matter arises from plaintiff's motion to strike an affidavit in support of defendants' motion for summary judgment, filed April 2, 1956. The affidavit was not filed until June 1, 1956, the day of the hearing on summary judgment.

Under F.R. 56(b) defendant has the election of filing supporting affidavits

---

3. Professor Moore states that answers to interrogatories under F.R. 33 fall within the consideration of summary judgment. 6 Moore, Federal Practice, par. 56.11[5].

4. See generally the pronouncement of the Court of Appeals in Frederick Hart & Co. v. Recordgraph Corp., 3 Cir., 169 F. 2d 580, reversing D.C.Del., 73 F.Supp. 146; and dicta in Reynolds Metals Co. v. Metals Disintegrating Co., 3 Cir., 176 F.2d 90, 92; but criticized by Charles Alan Wright, "Rule 56(e): A Case Study On The Need For Amending The Federal Rules", 69 Harv.L.Rev. 839 (March 1956).

with his motion. I observe F.R. 6(d), applicable to all motions: "When a motion is supported by affidavit, the affidavit should be served with the motion." This leaves no room for judicial discretion. See 6 Moore, Federal Practice, par. 56.14[1].

Plaintiff's motion to strike is granted. Submit order.